PEOPLE *v.* BURTON.

1. CRIMINAL LAW—DRIVING AUTOMOBILE WHILE UNDER INFLUENCE OF INTOXICATING LIQUOR—CHEMICAL TESTS—STATUTES.

A person charged with driving under the influence of intoxicating liquor has a right to demand 1 of the statutory chemical tests if facilities are reasonably available for its administration, and if he takes a test under police direction he has the right to a reasonable opportunity to have a person of his own choosing administer 1 of the tests within a reasonable time after his detention, if he so requests.

2. SAME—DRIVING AUTOMOBILE WHILE UNDER INFLUENCE OF INTOXICATING LIQUOR—CHEMICAL TESTS—DUE PROCESS.

A person charged with driving under the influence of intoxicating liquor is deprived of due process of law when he is denied a reasonable opportunity, under the circumstances, to obtain a timely sample of blood at his own expense (CLS 1961, § 257.625a).

3. SAME—DRIVING AUTOMOBILE WHILE UNDER INFLUENCE OF INTOXICATING LIQUOR—CHEMICAL TESTS—DUE PROCESS.

Failure of police to inform defendant charged with driving under influence of intoxicating liquor that the physician he requested to make a chemical· test was not at his office or home and had not called back *held,* to cause error, where at the time defendant was taken to lockup he had acted to protect his right to have a blood alcohol test made and could not be expected to further demand his statutory right (CLS 1961, § 257.625a).

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 333.

4. SAME—DRIVING AUTOMOBILE WHILE UNDER INFLUENCE OF IN-
TOXICATING LIQUOR—CHEMICAL TESTS—APPEAL AND ERROR—NEW
TRIAL.

> Failure of police to inform in a timely fashion defendant charged
> with driving under the influence of intoxicating liquor that
> the physician he had asked for to make a blood alcohol test
> could not be found, which deprived defendant of a reason-
> able opportunity to gather competent evidence for his own
> defense, cannot be remedied by a new trial and hence requires
> reversal of conviction without a new trial.

Appeal from Recorder's Court of Detroit, Traffic
and Ordinance Division, Maher (Richard M.), J.
Submitted Division 1 February 5, 1968, at Detroit.
(Docket No. 2,431.) Decided September 4, 1968.

Dallas Melvin Burton, Jr., was convicted of driv-
ing a motor vehicle while under the influence of in-
toxicating liquor, as a second offender. Defendant
appeals. Reversed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, *Samuel J. Torina,* Chief Ap-
pellate Lawyer, and *Richard J. Padzieski,* Assistant
Prosecuting Attorney, for the people.

*James N. McNally III,* for defendant.

LESINSKI, C. J. Defendant appeals from his con-
viction and sentence for driving a motor vehicle
while under the influence of intoxicating liquor, as
a second offender.[1]

The defendant was arrested on October 30, 1965,
and taken to the scientific bureau at Detroit police
headquarters. Patrolman George Morton, the inter-
viewing officer, advised defendant of his right to a

---

[1] CLS 1961, § 257.625 (Stat Ann 1960 Rev § 9.2325).

blood alcohol test given by a person of his own choosing.[2] Defendant gave the officer the name of a physician and requested that he be called to make a test. The doctor was out when the officer telephoned his clinic and residence. The officer told the doctor's wife that defendant wanted a blood test and she informed him that the doctor was expected home "in 30 minutes to 1 hour." The officer left his telephone number and extension and asked that the doctor return the call. To his knowledge, the doctor never called back.

The record shows that defendant, who had meanwhile been taken to the detention facility within police headquarters, was never told that the doctor had not called the officer. The record does not show whether the officer made the telephone call to the doctor's clinic or residence in the defendant's presence. Patrolman Morton testified as follows:

"*Q.* How long did you keep the defendant there waiting to see whether or not the doctor would return the call?

"*A.* I didn't keep him there for that purpose.

"*Q.* But anyway, how long did you wait before you sent him back?

"*A.* 'Sent him back?'

"*Q.* Well—wherever he was?

"*A.* He went up to the 9th floor right away.
[*Note: the detention facility is on the 9th floor of police headquarters.*]

"*Q.* 'Right away?'

"*A.* Yes.

"*Q.* So he doesn't know whether the doctor called back or not?

"*A.* He doesn't—no, he doesn't."

---

[2] CLS 1961, § 257.625a, as amended by PA 1964, No 104 (Stat Ann 1965 Cum Supp § 9.2325[1]). This section was further amended by PA 1967, No 253; however, this later amendment will not affect the determination of this case.

The defendant on appeal claims that he was denied his statutory right to take a test to determine the amount of alcohol in his blood. The people contend that none of his rights were violated since he failed to demand a test.

CLS 1961, § 257.625a, as amended by PA 1964, No 104 (Stat Ann 1965 Cum Supp § 9.2325[1]), gives defendant the right to demand one of the statutory chemical tests if facilities are reasonably available for its administration,[3] and, if he takes a test under police direction, a reasonable opportunity to have a person of his own choosing administer one of the tests within a reasonable time after his detention, if requested by defendant. *People* v. *Alford* (1967), 8 Mich App 211; *People* v. *Kerrigan* (1967), 8 Mich App 216.

There was no testimony at the trial that the police administered any of the statutory tests, or that defendant was advised of his right to refuse to take a test.[4] It is undisputed, however, that defendant was told he could have a blood alcohol test given by a person of his own choosing, and the police agreed to call his doctor. It is recognized that the intoxicating effect of alcohol diminishes with the passage of time; hence the probative value of a blood alcohol test diminishes as well. At the time defendant was taken to the lockup, he had acted to protect his right to a blood alcohol test. Defendant, waiting in the lockup for some word of his doctor, could hardly be expected to further demand his statutory rights.

There is respectable authority for the proposition that a person is deprived of due process of law when he is denied a reasonable opportunity, under

---

[3] We intimate no opinion in this decision as to what constitutes reasonably available facilities within the meaning of the statute. Defendant contends that Receiving hospital, which is located across the street from Detroit police headquarters, constitutes such facilities. But, see *People* v. *McCrohan* (1967), 9 Mich App 41.

[4] Subsection (4) of CLS 1961, § 257.625a, *supra*, as amended.

the circumstances, to obtain a timely sample of blood at his own expense. See *State* v. *Munsey* (1956), 152 Me 198 (127 A2d 79); *In re Newbern* (1959), 175 Cal App 2d 862 (1 Cal Rptr 80, 78 ALR 2d 901); *In re Koehne* (1960), 54 Cal 2d 757 (8 Cal Rptr 435, 356 P2d 179); Annotation: 78 ALR2d 905. To the same effect, see *In re Martin* (1962), 58 Cal 2d 509, 512 (24 Cal Rptr 833, 835, 374 P2d 801, 803), in which the court declared:

"But in no event can duly constituted authority hamper or interfere with efforts on the part of an accused to obtain a sampling of his blood, without denying to him due process of law. We are persuaded to such conclusion in any instance where the conduct of the authorities, whether through affirmative action or by the imposition of their rules and regulations, imposes any material obstacle in the path of the accused * * * It is sufficient if, in seeking to establish the fact of the alcoholic content of his blood, the authorities, by their actions or regulations, frustrate his reasonable efforts designed to produce probative evidence."

We hold that the failure of the police to inform the defendant in a timely fashion that his physician was not contacted deprived him of a reasonable opportunity to gather competent evidence for his defense, as contemplated by the statute. This error cannot be remedied by a new trial.

Reversed.

McGREGOR and LEVIN, JJ., concurred.