[No. 6005–1. Division One. March 12, 1979.]

THE CITY OF BLAINE, *Respondent,* v. ERNEST
SUESS, *Appellant.*

*Rusing & Platte* and *Richard C. Platte,* for appellant.

*Nelle & Packer* and *Richard A. Nelle,* for respondent.

WILLIAMS, J.—Ernest Suess was arrested in Blaine, Washington, for driving while intoxicated. He was advised of his rights by the arresting officer and transported by county authorities to the county jail in Bellingham.

Suess was subsequently charged and convicted of driving a motor vehicle while under the influence of or affected by

intoxicating liquor. Suess moved to suppress evidence obtained from a Breathalyzer test and, after a guilty verdict was returned, moved for an order in arrest of judgment or a new trial. The motions were based on the contention that he was denied the right to attempt to procure a chemical test in addition to the Breathalyzer test administered by police. The motions were denied and Suess appeals.

Suess contends that the failure of the police to implement his requests for a blood test required suppression of the Breathalyzer evidence or dismissal of the charge for denial of due process.

RCW 46.20.308 (implied consent) provides that:

> Such officer shall inform the person of his right to refuse the test, and of his right to have additional tests administered by any qualified person of his choosing as provided in RCW 46.61.506.

Suess was so advised.

At the station and on the drive to Bellingham from Blaine, Suess told the officers that he would like a blood test and asked the officers to drive him to one. There is evidence that while in Blaine, a city officer told him that the county van to be used to transport him to the county jail would go by St. Luke's Hospital in Bellingham for a blood test. The stop–off for a blood test did not materialize, and Suess contends that because he was not given such a test at St. Luke's, his right to have a test administered by a person of his choosing was violated. It was not.

The scheme of the implied consent statute is that the arresting authority will administer one test and the arrested person, if he chooses, may arrange for another. There is no requirement that the arresting authority make one test and then arrange for another if the arrested person is dissatisfied with the result of the first one. The accused must act to protect his interests, and it is only when he is denied a reasonable opportunity to procure additional tests that he may claim a denial of due process. *In re Koehne,* 54 Cal. 2d 757, 356 P.2d 179, 8 Cal. Rptr. 435, 436 (1960). And *see Smith v. Cada,* 114 Ariz. 510, 562 P.2d 390, 394 (1977).

 One of the purposes of the implied consent law is to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication. *Nowell v. Department of Motor Vehicles,* 83 Wn.2d 121, 516 P.2d 205 (1973), *Greenwood v. Department of Motor Vehicles,* 13 Wn. App. 624, 536 P.2d 644 (1975). Of course, Suess, in desiring a blood test by a qualified person of his choosing, hoped to prove his nonintoxication. He did have the right to have additional tests made, *State v. Richardson,* 81 Wn.2d 111, 499 P.2d 1264 (1972), but he did not exercise that right. He simply said that he wanted an additional test. The statute places no duty or burden upon police officers to select a qualified person for an additional test, or to arrange for it, or to pay for it. All of that was up to Suess, who did nothing. The officers did not deny him a reasonable opportunity to procure the additional tests, and his due process rights were not violated.

RCW 46.61.506(5) states that:

> The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a law enforcement officer.

Suess' inability to obtain an additional test by a person of his choosing therefore does not call for the suppression of the test administered by the authorities.

Affirmed.

SWANSON, J., concurs.

RINGOLD, J. (dissenting)—The majority obscures the basic issue here, when it states that Suess did not exercise his right to have additional tests made.

In interpreting a statute identical to Washington's, the Arizona Court of Appeals held:

> [W]hile the state is not required to provide the accused with a free blood test, or to release him from custody without bail, it may not unreasonably interfere with an accused's reasonable attempts to secure, at his own expense, a blood or other scientific test for the purpose of

attempting to establish evidence of his sobriety at or near the crucial time under consideration.

*Smith v. Cada,* 114 Ariz. 510, 514, 562 P.2d 390, 394 (Ct. App. 1977).

The Arizona court went on to hold that unreasonable interference with the defendant's right to obtain evidence (by means of procuring additional tests) directly impinged on the defendant's ability to prepare a defense and safeguard his rights to a fair trial and was thus a denial of due process of law.

The parties agree that in keeping with due process requirements, a defendant in Suess' situation is entitled to a "reasonable opportunity" under the circumstances to obtain a test in addition to the Breathalyzer test administered by the police. *People v. Burton,* 13 Mich. App. 203, 163 N.W.2d 823, 825 (1968); *Smith v. Cada, supra; In re Newbern,* 175 Cal. App. 2d 862, 1 Cal. Rptr. 80, 82–83 (1959).

The crucial question then is whether the police under the circumstances of this case denied Suess a reasonable opportunity to have subsequent tests made. Because constitutional questions regarding possible due process violations are raised and because the trial court did not enter specific factual findings, an independent examination of the record is warranted. From this examination the following additional uncontroverted facts are essential to illuminate the concern here. After Suess was arrested in Blaine, Officer William Quaade transported him to the Blaine police station. Suess requested officer Quaade that he be allowed to exercise his right to be given an additional test. Officer Quaade advised Suess that he would be transported to the county jail in Bellingham and that the normal procedure was to take people to St. Luke's Hospital in Bellingham for the blood test. Suess indicated that this was acceptable to him and that it was Quaade's understanding that Suess would be transported to St. Luke's Hospital for the test. Suess testified that when he was subsequently being transported from Blaine to Bellingham by Deputy Sheriff Sharp,

I asked the officer who drove me to the jail "Now you drive me to a blood test and can I get that blood test in the jail?" and he say, "No, there's no such things." "There's no point in asking you again. I have to go to jail?" And he say, "Yes."[1]

Deputy Sheriff Sharp did not testify.

Suess was in custody. He had done everything a reasonable person could do under the circumstances to implement his right to have an additional test. He had been told that he would be given the additional test at St. Luke's Hospital. Whatever the reason that Deputy Sharp did not transport him first to St. Luke's Hospital for that purpose, there was a duty upon the police to transport Suess to a facility where he could obtain the additional test. Suess has made a prima facie showing that the police impermissively denied or interfered with his opportunity to obtain these tests and thus denied him due process. *In re Martin,* 58 Cal. 2d 509, 374 P.2d 801, 24 Cal. Rptr. 833 (1962); *Smith v. Cada, supra.* Such denial requires reversal and dismissal. *People v. Burton, supra.*

Reconsideration denied June 4, 1979.

Review granted by Supreme Court September 26, 1979.

---

[1]Suess is a native of Switzerland.